JOHN CROLIUS, Appellant, v. SARAH STARK and others, Respondents.

(GENERAL TERM, FIRST DEPARTMENT, JANUARY, 1873.)

A surrogate's decision, rejecting a testamentary paper for mental incapacity, based upon the decided opinion of an attending physician whose visits were infrequent, and formed from the condition of, and not from conversations with, the deceased, against the testimony of a physician speaking not from interview, but from statement of the case, and of lay witnesses whose intercourse had been frequent, who had conversed with and seen the testatrix transact business, and who were witnesses to the paper, though conflicting and colored by evident bias,—Held, not to be conclusive, and a feigned issue awarded on appeal.

Entire loss of intellect producing in the decedent inability to understand what he is doing or the contents of the paper when read, are necessary to warrant its rejection on the ground of incapacity.

APPEAL from a decree of the surrogate of New York, admitting to probate the will and first codicil of Sarah Gray, deceased, and rejecting the second codicil. The facts relating to the question discussed sufficiently appear in the opinion.

*Henry Whittaker*, for the appellant.

*H. A. Nelson*, for the respondent, Sarah Stark.

Present—INGRAHAM, P. J., and BRADY, J.

INGRAHAM, P. J. The appeal in this case is from the decree of the surrogate, admitting to probate the will and first codicil of Sarah Gray and rejecting the second codicil. The objection made to the second codicil was on the ground of mental incapacity and of fraud and undue influence. The surrogate was of the opinion that the will and the first codicil were executed by the testatrix in due form of law, and at a time when there was no doubt as to her capacity to make a will, and his decision was based entirely as to the codicil on the supposed invalidity of the second codicil by which the first was revoked, and of the cancellation of it which took place at the time of executing the last.

The grounds on which his decision rested are as follows, viz.: that the testimony of the lay witnesses was conflicting, and they were interested in the result. Those on one side testified to many acts which he thought indicated a sufficient mental capacity, while those on the other side show a state of facts which strongly denoted a contrary mental condition.

The surrogate then says: "Under such circumstances, I must resort to the testimony of professional witnesses to influence and guide me in determining the question of capacity." He then refers to the testimony of the two physicians who were examined before him, Drs. Clark and Quackenboss, and adopts the testimony of the latter as controlling, because he had been her attending physician, and, in his opinion, testatrix

Crolius *v.* Stark.

was incapable of properly exercising her judgment in regard to making a will.  Under this evidence he rejected the second codicil.

In regard to the evidence of the lay witnesses, there can be no doubt that there was much contradiction on the part of the witnesses, and in many cases a coloring was given to their testimony which clearly shows the bias in the minds, whether produced by feeling or interest.

If this case rested solely on that evidence, we should hesitate about interfering with the decision, knowing that the surrogate had the witnesses before him, and had a better opportunity of deciding as to the credit they were entitled to than we have on an appeal.  As, however, he appears to have been controlled in his decision by the testimony of the physician who attended her, other matters must be considered on this appeal.

The testimony of both witnesses to the last codicil, one of whom had been witness to the first also, was unqualifiedly in favor of the mental capacity of the testatrix.  Dr. Clark's testimony was in favor of her capacity, although he spoke from a statement of her case, and not from having visited the deceased.

The testimony of her physician is decided against her competency to make a will.  He speaks of her intellect being enfeebled, and her inability to comprehend the claims on her bounty and the provisions of the codicil.

The second attack appears to have been a paralysis of the muscles of the throat, and the power of speech and some failure of memory was caused by it.  He stated his opinion was formed from her condition and not from conversations with her.  Nor is it clear that he had many opportunities of forming such opinions after 13th February.  Subsequent to that day his interviews with her were not more than one a month, if as often.  These opportunities of judging of mental capacity do not seem to be sufficient to warrant the rejection of the testimony of all those who were about the testatrix daily, whose intercourse was frequent, who had conversations

with her on many occasions, who saw business transacted by her, or who were the witnesses to the codicil which has been rejected.

These matters referred to, as well as many others which appear in the testimony, lead us to entertain doubt, as to the questions argued, in regard to the last codicil.

It does not follow that either age or weakness of intellect is sufficient to incapacitate a person from making a will. It must be an entire loss of intellect, so that the testatrix was unable to understand what she was doing, or the contents of the paper when read to her; we do not think the evidence in this case warrants this conclusion. She may have been, and doubtless was, weakened both in body and mind by her second attack, but not to an extent sufficient to destroy her capacity to dispose of her property. We think this is one of those cases in which it is proper to take the finding of a jury upon the questions raised. While we would not, without further examination, order the second codicil to probate, we think the decision of the court below should not be sustained, withal the questions should be sent down to the circuit for trial.

Decree of the surrogate reversed and feigned issue awarded, costs to abide event.