Adlington, S.
The decedent whose will has been the subject of the present controversy, died in November, 1886, at the advanced age of eighty-six years, at his home in Brighton, N. Y.
During his long and industrious life he had become the owner of property, valued at about 815,000, which he sought to dispose of by a will made about six years before his death in a manner which to him seemed right and just.
He gave to his wife the use of all his property during her life, and thereafter an equal share of the income thereof to each of his seven children, and directed an equal division among his grandchildren of the share of each of his own children as they should successively die.
This fair and equitable arrangement for the distribution of their parent’s property seems to have been highly unsatisfactory to the children of the decedent, and while the contest of the will has been conducted in the name of but one of them, it has been plainly evident from the outset that it had the hearty sympathy and acquiescence, if not the active assistance, of all.
There was no room for the charge of undue influence, or inequality of distribution, and the only ground of contest that remained was lack of testamentary capacity.
To support this plea the relatives of the family, both by blood and marriage, have been brought forward, and their bias and interest in behalf of the contest have been strongly marked.
By far the larger portion of the testimony in the case comes from them and is colored and pervaded by their evident interest in the result.
The directions for drawing the will were given by the testator personally to his friend, the draftsman, who is a worthy and honored minister of the Society of Friends.
At this time the decedent talked over the whole matter carefully and deliberately, gave the names of all his children, specified the provision he desired to make for them, and assigned his reason for so doing; and I venture the opinion that few wills, admitted to probate, are shown to have more accurately and exactly expressed the purposes of their makers than this one does the desires of Mr. *212 Blaker. I give no credence to the statement that at the time of its execution the will was not in all respects as the testator wished it to be.
Some things testified to by the witnesses for the contestant indicate that in 1880, and subsequently, the testator was becoming quite weak in body and mind, and in 1883 this condition had increased to such an extent that a committee of his person and property was appointed in a proceeding had for that purpose.
The incidents of the sale of hay, and the alleged giving away of valuable standing timber, examined in the light of the testimony in regard to them, given on the part of the proponents, by the very persons with whom the transactions were had, illustrate very well the extent to which the acts of the decedent are now misrepresented.
I was favorably impressed with the candor and truthfulness of Mr. Hickok, and think that he gave a fair and reliable picture of the decedent’s condition during the latter years of his life, and I am well satisfied that Mr. Blaker had ample capacity to make a testamentary disposition of his property according to the law on that subject as laid down by the numerous decisions relating to the topic. Delafield v. Parish, 25 N. Y., 9; Horn v. Pullman, 72 id., 269-276; affirming, 10 Hun, 471; Children's Aid Society v. Loveridge, 70 N. Y., 387, 392-3; Coit v. Patchen, 77 id., 533, 536; Matter of Will of O'Hara, 95 id., 410; Crolius v. Stark, 7 Lans., 311.
The testimony of the alienists who had never seen the testator, while entitled to such weight as the standing and the learning of the witnesses will always give to their opinions, does not convince me that the decedent was of unsound mind when he made the will; and the language of the court in Cornwell v. Piker (2 Dem., 382) as to similar testimony, expresses my conviction in the present instance.
I do not think that there is any unlawful suspension of the power of alienation, or of the absolute ownership of the personal property under, this will; a question which I am called on to determine under section 2624, Code of Civil Procedure.
Upon the death of the widow and of each of the testator’s children, the share of each child must then be straightway distributed, so that no more than two lives intervene between the testator’s death and the division of the respective shares of his children in his estate.
This is not contrary to the provisions of the statute. Monarque v. Monarque, 80 N. Y., 320; Bailey v. Bailey, 97 id., 460.
The will must, therefore, be admitted to probate, and decree may be settled on three days notice.